# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division
### 9:19-cv-80278-DMM

CORI SOKOLOW and       )
BRETT SOKOLOW,       )
       )
     Plaintiffs     )
v.       )
       )     **DEFENDANTS' ANSWER,**
DOMINIQUE DAMICO and     )     **AFFIRMATIVE DEFENSES,**
       )     **COMPULSORY COUNTER**
RAMBLE ON FARM     )     **CLAIMS AND REQUEST FOR**
     Defendants.   )     **JURY TRIAL**

### DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, COMPULSORY COUNTER-CLAIMS AND REQUEST FOR JURY TRIAL

The Defendants Dominique Damico and Ramble on Farm ("Defendants"), by and through their undersigned attorneys respond to the allegations in the Plaintiffs' Complaint subject to all affirmative defenses, including but not limited to the affirmative defense that this jurisdiction is an improper venue for this case. Defendants deny each and every allegation of the Plaintiffs' Complaint which is not specifically admitted and file their compulsory counter-claims. Each of the responses, defenses, counts and allegations which follow is pleaded in the alternative or additionally. Paragraphs 1-132 of Defendants' Answer correspond and respond to each numerical paragraph (1-132) of Plaintiffs' Complaint. The Defendants will make any necessary elections at the latest stage of these proceedings so allowed. No election is made now. Defendants may elect to pursue their counter-claims against Plaintiffs even if the Plaintiffs' claims are dismissed.

## AS TO ALLEGATIONS COMMON TO ALL COUNTS – SUMMARY OF THE ACTION

1. Defendants admit that the underlying matter concerns the Horse "Rockette", deny the remainder of the allegations and alleged facts stated and demand strict proof of same.

## AS TO ALLEGATIONS COMMON TO ALL COUNTS – THE PARTIES

2. Defendants lack personal knowledge to respond to the facts and allegations in this paragraph and therefore deny the same and demand strict proof.

3. Defendants admit Dominique Damico ("Damico") is a citizen and resident of Berwyn, Pennsylvania.  Defendants admit Damico is a professional horse trainer and currently is an owner of Rockette.  Defendants deny the remainder of the allegations and alleged facts stated and demand strict proof of same.

4. Defendants admit Ramble On Farm is an unincorporated entity with a principle place of business at 2400 Whitehorse Road, Berwyn, Pennsylvania.  Ramble On Farm provides professional equestrian services.  Defendants deny the remainder of the allegations and alleged facts stated and demand strict proof of same.

## AS TO ALLEGATIONS COMMON TO ALL COUNTS -- JURISDICTION AND VENUE

5. Defendants admit the Court may have subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) due to complete diversity of citizenship of the parties.  Defendants deny the remainder of the allegations and alleged facts stated and demand strict proof of same.

6. Defendants deny the facts and allegations as stated within this paragraph and specifically deny that jurisdiction and venue in this District and Division is proper pursuant to F.S. §48.193(6) and (7) pursuant to 28 U.S.C. §1391(b).

## <u>AS TO GENERAL ALLEGATIONS – THE HORSE AND THE DEFENDANTS</u>

7. Defendants admit that Rockette is an eleven (11) year old mare, registered with the United States Equestrian Federation ("USEF") under Horse Identification #5360025. Rockette's show record speaks for itself and is attached as Exhibit A.  Defendants deny any and all remaining facts and allegations as stated within this paragraph and demand strict proof of same.

8. Defendants admit Rockette was purchased from Redfield Farm, Inc.  Defendants deny the remaining facts and allegations as stated within this paragraph and demand strict proof of same.

9. Defendants admit Rockette was leased to a third party in 2016 and 2017.  Defendants deny the remaining facts and allegations as stated within this paragraph and demand strict proof of same.

10. Defendants admit Katie Williams is the daughter of Kristen Williams and deny the remaining facts and allegations as stated within this paragraph and demand strict proof of same.

11. Defendants admit Gabrielle Sokolow is the minor daughter of Defendants and is without knowledge as to the remaining facts and allegations within this paragraph and therefore deny all remaining facts and allegations within this paragraph and demand strict proof of same.

12. Defendants admit the Sokolow's were clients for over ten years.  Defendants lack personal knowledge as to the remaining facts and allegations within this paragraph and therefore deny all remaining facts and allegations within this paragraph and demand strict proof of same.

13. Defendants admit the Sokolow's were clients for ten years prior to their move to California.  Defendants lack personal knowledge as to the remaining facts and allegations within this paragraph and therefore deny all remaining facts and allegations within this paragraph and demand strict proof of same.

14. Defendants admit they leased ponies to the Plaintiffs between 2014-2017 and are without knowledge as to the remaining facts and allegations within this paragraph and therefore deny all remaining facts and allegations within this paragraph and demand strict proof of same.

15. Defendants admit they saw Plaintiffs at horse shows in 2018 and that Plaintiffs began working with another horse trainer Elizabeth Reilly ("Reilly").  Defendants lack personal knowledge as to the remaining facts and allegations within this paragraph and therefore deny all remaining facts and allegations within this paragraph and demand strict proof of same.

**AS TO GENERAL ALLEGATIONS – THE LEASE OF ROCKETTE**

16. Defendants admit that Plaintiffs and Reilly inquired about Rockette's availability for lease in 2018. Defendants were generally aware of Plaintiffs show schedule for 2018 and 2019.  Defendants deny all remaining facts and allegations within this paragraph and demand strict proof of same.

17. Defendants admit that Plaintiffs and Reilly inquired about Rockette's availability for lease in 2018.  Defendants admit that Plaintiffs and Reilly had substantial knowledge of Rockette either from their time at Ramble on Farm and/or from their time competing with Ramble on Farm and/or from their time at shows where Rockette competed.  Defendants lack personal knowledge as to the remaining facts and

allegations within this paragraph and therefore deny all remaining facts and allegations within this paragraph and demand strict proof of same.

18. Defendants admit that they told Reilly and Plaintiffs Rockette may be available for lease, although there were other persons all-ready standing in line to lease Rockette. Defendants deny all remaining facts and allegations as state within this paragraph and demand strict proof of same.

19. Defendants lack personal knowledge of the facts and allegations within this paragraph and therefore deny all facts and allegations within this paragraph and demand strict proof of same. Defendants further respond and admit that Plaintiffs relied upon the representations of their horse trainer Elizabeth Reilly, veterinary communications and trial period showing Rockette when making their decision to enter the lease on Rockette.

20. Defendants admit that Plaintiffs leased Rockette for a short term in 2018 and competed Rockette at the Middleburg Classic and prestigious National Capital Challenge Horse Shows.  Defendants deny any other facts and allegations within this paragraph and demand strict proof of same.

21. Defendants admit they did not disclose any pre-existing medical conditions of Rockette as there were none.  Defendants deny any other facts and allegations within this paragraph and demand strict proof of same.

22. Admitted.

23. Defendants admit that Plaintiffs wished to lease Rockette long term.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

24. Admitted.

25. Defendants admit they declined Plaintiffs' offer to lease Rockette month to month and the communication to the Plaintiffs speaks for itself.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

26. Defendants admit Plaintiffs made a counter-offer which Defendants declined.  The communication to the Plaintiffs speaks for itself.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

27. Defendants admit they communicated to Plaintiffs the monetary terms for the long-term lease of Rockette.  The communication to the Plaintiffs speaks for itself.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

28. Defendants disclosed the osteochondritis dissecans (OCD) of the right hind fetlock of Rockette to Plaintiffs through Reilly, their agent.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

29. Figures 1 and 2 speak for themselves.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

30. Defendants admit that the references to Kristen and Katie are Kristen and Kaitlyn Williams.  Defendants admit that Defendants and Kristen Williams own Rockette.  Defendants admit Damico is the agent for Rockette.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

31. Defendants admit that the Rockette lease entered by Plaintiffs and Defendants was attached to the Plaintiffs' Complaint as Exhibit A and that the form was provided to

Plaintiffs, who had the opportunity to review, edit and sign the lease.  Upon information and belief, Defendants Admit that the form used for the Rockette lease originated from a prior lease provided by Elizabeth Reilly for a pony leased to Plaintiffs.  Defendants admit that both Plaintiffs signed the lease, including Plaintiff Brett Sokolow who is an attorney licensed to practice law in California.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

32. Paragraph 14 of the lease speaks for itself.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

33. The lease payment terms speak for themselves.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

34. Denied.

35. Defendants admit the lease contained two purchase options for the Plaintiffs. Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

36. Denied.

37. Denied.

38. Defendants admit the Plaintiffs were required to insure Rockette for $350,000.00 during the lease period and pay all of Rockette's expenses during the lease period. Defendants lack personal knowledge of the remaining facts and allegations within this paragraph and therefore deny the same and demand strict proof.

39. Defendants admit Dr. Kate Stephenson of Miller and Associates completed a pre-purchase exam of Rockette at the request of the Plaintiffs and Reilly.  Exhibit B to

Plaintiffs' complaint speaks for itself, illegible as it is in the format provided. Defendants admit the health of the horse was good at the time of the pre-purchase exam and as confirmed by the pre-purchase exam, after two solid weeks of strenuous horse showing by the Plaintiffs. Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

40. Defendants admit Reilly and Plaintiffs limited the scope of the pre-purchase exam. Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

41. Denied.  Upon information and belief, Dr. Stephenson limited the scope of the pre-purchase exam of Rockette, based upon the instructions of the Plaintiffs and their agent Reilly.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

42. Defendants admit Damico did not disclose any pre-existing health conditions of Rockette at the time of the pre-purchase exam outside of prior disclosures made to Reilly and Plaintiffs and Stephenson.  Defendants admit that at the time of the pre-purchase exam, Rockette had not suffered from any injury, illness or pre-existing health condition that interfered with her ability to perform as a pleasure or show horse.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

43. Defendants admit that Rockette has an OCD in the right hind limb.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

44. Defendants disclosed the presence of the OCD to Reilly, agent of Plaintiffs.  Upon information and belief, Plaintiffs were aware of the OCD during their time and presence at Ramble on Farm prior to their move to California.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

45. Denied.

## AS TO GENERAL ALLEGATIONS – THE CONDITION OF THE HORSE DETERIORIATES

46. Defendants admit that Gabrielle Sokolow was champion with Rockette at the Middleburg Classic and the Capital Challenge Horse Show.  Defendants admit that Rockette was Champion at the Alltech National Horse Show and Reserve Champion at the Las Vegas National Horse Show.  Rockette's show record speaks for itself, attached as Exhibit A.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

47. Upon information and belief, Defendants admit that Rockette was boarded with Reilly at all times during the Plaintiffs' possession of Rockette, whether showing or non-showing.  Upon information and belief, Defendants admit that Rockette was lame in the right front forelimb in December as a direct result of the care and treatment by the Plaintiffs and/or the agents of the Plaintiffs.  Defendants admit that Plaintiffs breached the lease agreement contract by not notifying Defendants of the lameness.  Upon information and belief, Defendants admit that the Plaintiffs caused Rockette to be blocked and injected in the right front forelimb. Defendants lack

personal knowledge as to the remaining facts and allegations within this paragraph and therefore deny the same and demand strict proof.

48. Upon information and belief, Defendants admit that Rockette was lame in the right front forelimb in California in December as a direct result of the care and treatment by the Plaintiffs and/or the agents of the Plaintiffs. Defendants admit that Plaintiffs breached the contract by not notifying Defendants of the lameness. Upon information and belief, Defendants admit that Plaintiffs caused Rockette to be blocked and injected in the right front forelimb in California and then shipped Rockette to the East Coast without layover and without a box stall in breach of the lease agreement. Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

49. Defendants lack personal knowledge of the facts and allegations contained within this paragraph and therefore deny those facts and allegations and demand strict proof of same. Upon information and belief, Defendants admit that Plaintiffs daughter attended the horse shows in Wellington to compete on a number of horses including but not limited to Rockette and many of the expenses recited within this paragraph may have some, little or no relationship to Rockette.

50. Defendants lack personal knowledge of the facts and allegations contained within this paragraph and therefore deny those facts and allegations and demand strict proof of same.

51. Defendants lack personal knowledge of the facts and allegations contained within this paragraph and therefore deny those facts and allegations and demand strict proof of same.

52. Denied.

53. Defendants lack personal knowledge of the facts and allegations within this paragraph and therefore deny those facts and allegations and demand strict proof of same. Defendants admit that Rockette is currently sound and in work as approved by veterinarians who expect Rockette to return to jumping May 1, 2019 and showing later that month.

54. Defendants lack personal knowledge of the facts and allegations within this paragraph and therefore deny those facts and allegations and demand strict proof of same.

55. Defendants admit that Plaintiffs breached the lease agreement contract with the Defendants and that Rockette returned to the care of Defendants in February 2019. Defendants admit that Plaintiffs' communicated with Defendants in writing prior to returning Rockette.  See Exhibit B.  Defendants deny that the lease was unilaterally rescinded by Plaintiffs and cancelled.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

56. Denied.

57. Defendants lack personal knowledge of the facts and allegations within this paragraph and therefore deny those facts and allegations and demand strict proof of same.

58. Denied.

## **AS TO COUNT 1 – FRAUDULENT MISREPRESENTATION PURSUANT TO F.S.§680.505(4)**

59. To the extent a response to this paragraph is required, it is Denied.

60. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any

11

work due to any health conditions.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

61. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants admit they disclosed the OCD to Reilly and Plaintiffs.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

62. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants admit they disclosed the OCD to Reilly and Plaintiffs.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

63. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants admit they disclosed the OCD to Reilly and Plaintiffs.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

64. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants admit they disclosed the OCD to Reilly and Plaintiffs.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

65. Defendants admit that Plaintiffs were clients of Defendants for ten years.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

66. Upon information and belief, Defendants admit that Plaintiffs relied upon their personal knowledge and experience with Rockette, the recommendations of their trainer and agent, Reilly, the recommendations of the veterinarian, the trial period and show experience with Rockette in addition to Rockette's show history and representations of the Defendants.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

67. Upon information and belief, Defendants admit that Plaintiffs relied upon their personal knowledge and experience with Rockette, the recommendations of their trainer and agent, Reilly, the recommendations of the veterinarian, the trial period and show experience with Rockette in addition to Rockette's show history and representations of the Defendants.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

## AS TO COUNT II – NEGLIGLENT MISPREPRESENTATION PURSUANT TO F.S. §680.505(4)

68. To the extent a response to this paragraph is required, it is Denied.

69. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants admit they disclosed the OCD to Reilly and Plaintiffs.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

70. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants admit they disclosed the OCD to Reilly and Plaintiffs.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

71. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants admit they disclosed the OCD to Reilly and Plaintiffs.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

72. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants admit they disclosed the OCD to Reilly and Plaintiffs. Upon information and belief, Defendants admit that Plaintiffs relied upon their personal knowledge and experience with Rockette, the recommendations of their trainer and agent, Reilly, the recommendations of the veterinarian, the trial period and show experience with Rockette in addition to Rockette's show history and representations of the Defendants.   Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

73. Denied.

74. Defendants admit that Plaintiffs were clients of Defendants for ten years.  Upon information and belief, Defendants admit that Plaintiffs relied upon their personal

14

knowledge and experience with Rockette, the recommendations of their trainer and agent, Reilly, the recommendations of the veterinarian, the trial period and show experience with Rockette in addition to Rockette's show history.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

75. Upon information and belief, Defendants admit that Plaintiffs relied upon their personal knowledge and experience with Rockette, the recommendations of their trainer and agent, Reilly, the recommendations of the veterinarian, the trial period and show experience with Rockette in addition to Rockette's show history.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

76. Upon information and belief, Defendants admit that Plaintiffs relied upon their personal knowledge and experience with Rockette, the recommendations of their trainer and agent, Reilly, the recommendations of the veterinarian, the trial period and show experience with Rockette in addition to Rockette's show history.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

## AS TO COUNT III – UNJUST ENRICHMENT AND DISGORGEMENT

77. To the extent a response to this paragraph is required, it is Denied.

78. Defendants admit they received $100,000.00 as the initial lease payment for the lease of Rockette.  Defendants deny each and every other fact and allegation in this paragraph and demand strict proof of same.

79. Defendants admit that at all pertinent times, while in the custody and control of the Defendants, Rockette was in good health and did not suffer any lameness or miss any work due to any health conditions.  Defendants deny each and every other fact and allegation in this paragraph and demand strict proof of same.

80. Upon information and belief, Defendants admit that Plaintiffs relied upon their personal knowledge and experience with Rockette, the recommendations of their trainer and agent, Reilly, the recommendations of the veterinarian, the trial period and show experience with Rockette in addition to Rockette's show history.  Defendants deny the remaining facts and allegations within this paragraph and demand strict proof of same.

81. Admitted.

82. Defendants lack personal knowledge of the facts and allegations contained within this paragraph and therefore deny those facts and allegations and demand strict proof of same.

83. Denied.

## AS TO COUNT IV – STRICT LIABLITY FOR UNFAIR AND DECEPTIVE TRADE PRACTICE PURUANT TO F.S. CHAPTER 501, PART II AND DEMAND FOR INJUNCTION

84. To the extent a response to this paragraph is required, it is Denied.

85. Defendants admit that Defendants and Plaintiffs entered a lease regarding Rockette with a purchase option and deny the remaining facts and allegations within this paragraph and demand strict proof of same.

86. Florida Administrative Code 5H-26.003(12) speaks for itself.  Defendants deny that Florida Administrative Code 5H-26.003(12) applies to the transaction between the parties for the lease of Rockette.  Defendants admit that the contract specifically states that Pennsylvania Law applies to the lease agreement. Defendants deny each and every other fact or allegation contained in this paragraph and demand strict proof of same.

87. Denied.

88. Denied.

89. Florida Administrative Code 5H-26.003(12) speaks for itself.  Defendants deny that Florida Administrative Code 5H-26.003(12) applies to the transaction between the parties for the lease of Rockette.  Defendants admit that the contract specifically states that Pennsylvania Law applies to the lease agreement. Defendants deny each and every other fact or allegation contained in this paragraph and demand strict proof of same.

90. Denied.

## AS TO COUNT V – BREACH OF FIDUCIARY DUTIES

91. To the extent a response to this paragraph is required, it is Denied.

92. Defendants admit that Plaintiffs were clients of Defendants for ten years.  Defendants deny each and every other fact and allegations contained in this paragraph and demand strict proof of same.

93. Denied.

94. Denied.

95. Defendants admit that Plaintiffs were clients of Defendants for ten years.  Upon

information and belief, Defendants admit that Plaintiffs relied upon their personal

knowledge and experience with Rockette, the recommendations of their trainer and

agent, Reilly, the recommendations of the veterinarian, the trial period and show

experience with Rockette in addition to Rockette's show history.  Defendants deny

the remaining facts and allegations within this paragraph and demand strict proof of

same.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

## AS TO COUNT VI – BREACH OF CONTRACT

100.    To the extent a response to this paragraph is required, it is Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

## AS TO COUNT VII – BREACH OF EXPRESS WARRANTIES, F.S.§680.21

106.    To the extent a response to this paragraph is required, it is Denied.

107.    Defendants admit that at all pertinent times, while in the custody and control of

the Defendants, Rockette was in good health and did not suffer any lameness or miss

any work due to any health conditions.  Defendants deny each and every other fact

and allegation in this paragraph and demand strict proof of same.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

**AS TO COUNT VIII – BREACH OF IMPLIED WARRANTY OF FITNESS FOR**

**A PARTICULAR PURPOSE, F.S. §680.213**

113.    To the extent a response to this paragraph is required, it is Denied.

114.    Defendants admit that Rockette was leased by the Plaintiffs as a pleasure and

show horse.  Defendants deny each and every other fact and allegation as stated in

this paragraph and demand strict proof of same.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

**AS TO COUNT IX – BREACH OF IMPLIED WARRANTY OF**

**MERCHANTABILITY F.S. §680.212**

119.    To the extent a response to this paragraph is required, it is Denied.

120.    Denied as stated.

121.    Denied.

122.    Denied.

123.    Denied.

## AS TO COUNT X – RESCISSION AND CANCELLATION

124.    To the extent a response to this paragraph is required, it is Denied.

125.    Defendants admit that Defendants and Plaintiffs entered a lease regarding Rockette with a purchase option and deny the remaining facts and allegations within this paragraph and demand strict proof of same.

126.    Defendants admit the Plaintiffs paid the initial lease payment of $100,000.00 and deny each and every remaining fact and allegation within this paragraph and demand strict proof of same.

127.    Denied.

128.    Defendants admit Plaintiffs returned Rockette to Defendants.  Defendants deny each and every remaining fact and allegation within this paragraph and demand strict proof of same.

129.    Denied.

130.    Denied as stated.

131.    Denied.

132.    Denied.

## AFFIRMATIVE DEFENSES

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:
### (Failure to State a Claim)

133.   Plaintiffs and Defendants entered into a contract to be governed by Pennsylvania

Law.  See Exhibit A to Plaintiffs' Compliant.

134.   Plaintiffs and Defendants agreed that Pennsylvania Law governed the contract.

135.   Plaintiffs pled Florida state law claims in Counts I, II, IV, VII, VIII, and IX.

136.   Plaintiffs attempt to rescind the contract pursuant to Florida law and in Count X

of the Complaint.

137.   Florida law does not apply to this contract.

138.   The allegations in the Complaint fail in their entirety to state a claim upon which

relief may be granted against Defendants.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
DEFENDANTS ALLEGE:**
(Intervening Negligence/Negligence of a Third Party)

139.   Upon information and belief, even if Defendants are liable in the manner

prescribed in the Plaintiffs' Complaint, which is specifically denied, whatever injuries

and damages if any which may have been sustained by the Plaintiffs were the direct

and proximate result of the intervening and superseding negligence of a third party,

for whose conduct Defendants bear no responsibility.  Therefore, Plaintiffs are barred

from recovery against the Defendants.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
DEFENDANTS ALLEGE:**
(Illegality of Plaintiffs – Doctrine of Unclean Hands)

140.   Upon information and belief, some or all of the relief sought is barred by

Plaintiffs' impropriety.

141.    Upon information and belief, Plaintiff Brett Sokolow is an attorney licensed to practice law in the State of California.

142.    Upon information and belief, Plaintiff Brett Sokolow violated the Pennsylvania Rules of Professional Conduct in the threats he made to Defendants in his letter of January 26, 2019 in an attempt to obtain money and a rescission or modification to the lease agreement.

143.    Upon information and belief, Plaintiffs breached the contract prior to the Defendants' alleged breach;

144.    Upon information and belief, Plaintiffs misused Rockette, the $350,000.00 asset of the Defendants in such a manner as to cause fracture of her ankle, an atypical horse show injury;

145.    Upon information and belief, Plaintiffs are using this suit and this forum as a way to induce and not pay the second installment under the lease which they agreed to in the lease contract;

146.    Upon information and belief, Plaintiffs are using this suit and this forum to harass the Defendants;

147.    Upon information and belief, Plaintiffs are alleging fraud and that they were unaware of the conformation of the horse (OCD) which was well known to them and to their agent;

148.    Plaintiffs cannot seek damages or equity from this Court because Plaintiffs come to the Court with unclean hands.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:
(Impairment of Collateral)

149.    Plaintiffs broke and damaged Rockette, the Collateral of the Lease Agreement, far

beyond the known confirmation of Rockette, by fracturing her ankle.

150.    Plaintiffs modified and impaired the collateral in such a manner that the relief

requested by Plaintiffs is barred.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:
### (Equitable Estoppel)

151.    Plaintiffs are barred from bringing this action in accordance with the doctrine of

Equitable Estoppel through their conduct.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:
### (Unjust Enrichment)

152.    Plaintiffs broke and damaged Rockette, fracturing her ankle and now want to get

out of the obligation they agreed to in the lease agreement.

153.    Defendants are owed the second installment, $50,000.00 plus all costs related to

Plaintiffs Default under the contract.

154.    Plaintiffs are unjustly enriched by keeping the $50,000.00 owed under the

contract.

155.    Plaintiffs seek further unjust enrichment by way of Plaintiffs' Complaint and as a

consequence the relief sought by Plaintiffs is barred.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:
### (Breach of Contract)

156.     Plaintiffs cannot recover on a breach of contract claim where Plaintiffs were the party(ies) who committed the material breach.

157.     Plaintiffs committed the material breach in a number of ways including but not limited to showing Rockette in more classes than authorized; failing to notify the Defendants of lameness after the November Las Vegas National Horse Show; failing to notify the Defendants of the lameness and blocking and injecting of Rockette's joint on the right front forelimb in December 2018; failing to ship Rockette across the country in accordance with the contract in a manner deemed safe for Rockette; failing to notify the Defendants of Rockette's continued lameness in January 2018 – the lameness which led to the MRI, diagnosis of the right front fracture and surgery to repair the fracture in the right front fractured forelimb of Rockette; failing to pay the second lease installment of $50,000.00 prior to returning Rockette and other such failures which may be unknown to the Defendants at this time.

158.     As a result of these material breaches of the contract, the relief sought by Plaintiffs is barred.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:
(Failure to Mitigate Damages)

159.     Plaintiffs cannot recover damages that result from a failure to mitigate damages and as a consequence the relief sought by Plaintiffs is barred.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:
(Anticipatory Breach)

160.     Plaintiffs breach of contract claims are barred due to the anticipatory breach by the Plaintiff.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:**

(Good Faith)

161.   Plaintiffs are unjustly enriched by $50,000.00 by keeping the second installment payment.

162.   Plaintiffs and/or Plaintiffs' agent knew about the conformation of Rockette prior to entering the lease.

163.   Defendants signed the lease with Plaintiffs in good faith and with the good faith belief that Plaintiffs needed additional time to assemble the second installment payment, not that they were trying to get out of paying the second installment altogether.

164.   Plaintiffs did not operate in good faith and as such the relief requested in Plaintiffs' Complaint is barred.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:**

(Reservation and Non-Waiver)

165.   Defendants reserve any additional and affirmative defenses as may be revealed or become available to Defendants during the course of their investigation and/or discovery in the case and is consistent with the Federal Rules of Civil Procedure.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:**

(Lack of Jurisdiction)

166.   This Court lacks jurisdiction over the subject matter of the Complaint.

167.   This Court lacks specific jurisdiction under F.S. §48.193.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:**

(Improper Venue)

168.    The contract that is the basis of the underlying disputes between the parties had a

Pennsylvania Choice of Law provision.

169.    The Plaintiff, Brett Sokolow is a licensed attorney and well aware of the choice of

law provisions in the contract.

170.    Pursuant to Rule 12(b)(3), and F.S. §§685.101 and 685.102, this action has been

filed in an improper venue and should therefore be dismissed or transferred.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:

(Contributory Negligence)

171.    The negligence of the Plaintiffs contributed to fractured ankle of Rockette.

172.    Plaintiffs' contributory negligence should be a complete bar to their recovery in

this matter.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:

(Assumption of the Risk)

173.    Plaintiffs have been buying, selling and leasing horses for years for Gabrielle to

pleasure ride and show.

174.    Plaintiffs know horses can become injured and lame with or without explanation.

175.    Plaintiffs contemplated that Rockette could become injured during the lease

period.

176.    The risk of Rockette becoming injured during the lease period was addressed in

the lease.

177.    Plaintiffs assumed the risk of Rockette becoming injured during the lease period

and therefore should be barred from seeking recovery from Defendants in this action.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE DEFENDANTS ALLEGE:

[Forum Non-Conveniens, Pursuant to 28 USC §1404(a)]

178.   Plaintiffs reside in California.

179.   Plaintiffs' agent resides in California.

180.   Defendants reside in Pennsylvania.

181.   Rockette resides in Pennsylvania.

182.   The lease agreement has a choice of law provision that Pennsylvania Law will apply to the contract.

183.   Rockette's veterinarians reside in Pennsylvania.

184.   Pennsylvania is a proper venue for this case.

185.   Florida is not a proper venue for this case under 28 USC §1391.

186.   For convenience of the parties and the witnesses and in the interest of justice, this case should be transferred to the Eastern District of Pennsylvania.

## COUNTER-CLAIMS

### PARTIES

187.   Plaintiff Cori Sokolow is a citizen and resident of California and the mother of minor Gabrielle Sokolow.

188.   Plaintiff Brett Sokolow is an attorney licensed in the State of California.

189.   Plaintiff Brett Sokolow is a citizen and resident of California and the father of minor Gabrielle Sokolow.

190.   Defendant Dominique Damico is a citizen and resident of Pennsylvania.

191.   Defendant Ramble On Farm is a Pennsylvania business with a principal place of business located at 2400 Whitehorse Road, Berwyn, Pennsylvania.

192.    Defendant Dominique Damico and Defendant Ramble On Farm will collectively be referred to as "Defendants."

## JURISDICTION AND VENUE

193.    The Court may have subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) as there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00.

194.    Upon information and belief, the Court lacks personal jurisdiction over the Plaintiffs and Defendants.

195.    Upon information and belief, the Court lacks specific jurisdiction pursuant to F.S. §48.193(a).

196.    Upon information and belief, the Plaintiffs do not operate or carry on a business within this state.

197.    Defendants do not operate or carry on a business in this state.

198.    Upon information and belief, the Plaintiffs did not commit a tortious act within this state.

199.    Defendants did not commit a tortious act within this state.

200.    Upon information and belief, Plaintiffs do not own, use, possess or hold a mortgage or other lien on any real property within this state.

201.    Defendants do not own, use, possess or hold a mortgage or other lien on any real property within this state.

202.    Upon information and belief, Plaintiffs caused diminution in value to Defendants property in the State of California.

203.    This case revolves around a contract entered into by the Plaintiffs which they
execute in California on or about October 8, 2018.

204.    This case revolves around a contract entered by the Defendants which they
executed in Pennsylvania on or about October 8, 2018.

205.    The contract, attached as Exhibit A to Plaintiffs' complaint contained a choice of
law provision for the State of Pennsylvania.

206.    No provision of the contract required acts to be performed in Florida.

207.    Upon information and belief, no injuries were caused to persons or property
within Florida arising out of acts or omissions by the parties outside of Florida.

208.    At the time of the alleged breaches of contract, the parties were not engaged in
solicitation or service activities within the state of Florida.

209.    Defendants bring what they believe are their compulsory counter-claims at this
time.

## FACTUAL BACKGROUND

210.    On or about October 8, 2018, Plaintiffs and Defendants entered into a lease for
pleasure riding and showing in the 3'3" – 3'6" hunter divisions, a horse named
"Rockette", also known as "Paris", a then eleven (11) year-old warmblood mare.

211.    Plaintiffs' horse trainer Elizabeth Reilly was the agent in the lease transaction
involving Rockette.

212.    Plaintiffs' trainer/agent Elizabeth Reilly received compensation in the form of a
commission based upon the lease of Rockette to the Plaintiffs.

213.    Under the terms of the lease, the Plaintiffs agreed to pay Defendants $150,000.00

for the lease term in two installments: $100,000.00 upon lease signing, and

$50,000.00 due on or before April 8, 2019.

214.    Plaintiffs paid the first installment to Defendants on or about October 8, 2019.

215.    Prior to entering the lease, Plaintiffs leased Rockette for a several weeks.

216.    During the short-term lease, Gabrielle Sokolow pleasure rode and showed

Rockette.

217.    During the short-term lease, Gabrielle Sokolow received Champion awards at

both horse shows.

218.    During the short-term lease, Rockette resided in the care of Elizabeth Reilly and

the Plaintiffs on a daily basis.

219.    During the short-term lease, Plaintiffs were in California.

220.    During the short-term lease, Plaintiffs had their trainer/agent Elizabeth Reilly take

the horse for veterinary inspection and exam for overall health and soundness.

221.    During the veterinary inspection and exam for overall health and soundness of

Rockette, Plaintiffs by and through their trainer/agent Elizabeth Reilly rejected the

option of having radiographs performed on Rockette.

222.    The veterinary inspection and exam for the overall health and soundness of

Rockette did not reveal any unsoundness or lameness.

223.    Plaintiffs agreed in the lease terms that Defendants made Rockette available and

that Plaintiffs conducted all such investigation of Rockette that it deemed necessary

or appropriate to be satisfied with Rockette's health, condition and suitability for their

intended use of Rockette.

224.    After signing the lease and paying the first installment, Plaintiffs and Gabrielle continued to show Rockette throughout the prestigious national horse shows in Washington, Kentucky and Las Vegas throughout October and November 2018.

225.    Rockette received championship honors at Kentucky and Las Vegas in 2018 with the Plaintiffs.

226.    Upon information and belief, Rockette became unsound during or after the Las Vegas National in November 2018.

227.    Upon information and belief, Rockette's lameness in the right front forelimb was examined by veterinarians in California in December, 2018 at the request of Plaintiffs and/or Plaintiffs' trainer/agent Elizabeth Reilly.

228.    Upon information and belief, Plaintiffs and/or Plaintiffs' trainer/agent Elizabeth Reilly had veterinarians block and inject Rockette's right front forelimb in December 2018.

229.    Upon information and belief, Plaintiffs and/or Plaintiffs' trainer/agent Elizabeth Reilly and/or their veterinarians did not determine the cause of Rockette's right front forelimb lameness prior to blocking and injecting the ankle.

230.    Defendants were not notified by Plaintiffs of Rockettes lameness or the veterinary treatments to block the lameness in December 2018.

231.    Shortly after blocking and injecting Rockette in December 2018, Plaintiffs and/or Plaintiffs' trainer/agent shipped Rockette across the country via truck and trailer transport.

232.    Special conditions under the lease included that Rockette must be flown or shipped in a box stall across the country.

233.    Rockette was not shipped in a box stall from California to Wellington, Florida.

234.    Rockette was shipped in a stall and a half from California to Wellington, Florida.

235.    When Rockette was shipped from California to Wellington, Florida she shipped without layover for at least thirty-six (36) hours.

236.    Upon information and belief, Rockette was unsound upon her arrival in Florida.

237.    Upon information and belief, the Plaintiffs and/or agent trainer Elizabeth Reilly sought veterinary care and treatment of Rockette in Wellington Florida, without consulting the Defendants.

238.    Plaintiffs and/or Plaintiffs' agent trainer Elizabeth Reilly arranged to send Rockette for MRI.

239.    On or about January 8, 2019, Plaintiffs and/or Plaintiffs' agent trainer Elizabeth Reilly notified Defendants of Rockette's lameness after scheduling the MRI.

240.    The MRI revealed Rockette suffered a fracture of her right front ankle.

241.    According to veterinarians, Rockette's injury as one typically seen in racehorses, consistent with pounding.

242.    Surgery to repair the fracture took place on or about January 11, 2019.

243.    Reilly reported to Defendants that Rockette's prognosis was good.

244.    On or about January 26, 2019, Defendants received a threatening letter with unfounded accusations demanding money from Plaintiffs and attempting to unilaterally rescind or revise the lease.

245.    The Plaintiffs had no right to unilaterally rescind the lease based upon the circumstances raised in their letter of January 26, 2019. (Attached Ex. B)

246.    Defendants verbally declined to rescind the lease.

247.   Defendants never agreed to rescind the lease in writing.

248.   Upon information and belief, Plaintiff Brett Sokolow's letter of January 26, 2019 to Defendants violated Pennsylvania's Rules of Professional Conduct, Rules 4.4 and 8.4.

249.   On or about January 29, 2019, Plaintiffs returned Rockette to Defendants.

250.   Restrictions on the use of the horse during the lease period included not showing Rockette in more than eight (8) over fences classes at any horse show.

251.   Plaintiffs showed Rockette in nine (9) over fences courses at the Middleburg Classic Horse Show.

252.   Plaintiffs showed Rockette in ten (10) over fences courses at the Capital Challenge Horse Show.

253.   According to the lease, Plaintiffs agreed to provide Defendants with all information about Rockette's health and her whereabouts.

254.   Plaintiffs agreed to be responsible for all fees, court costs, attorney and miscellaneous fees incurred by Defendants in enforcing the terms of the lease.

255.   The lease included a provision that Pennsylvania law would govern the terms of the lease agreement.

256.   The lease included a paragraph that the entire agreement between the parties was within the lease and could only be modified in writing.

257.   Defendants only warranties in the lease was that Rockette was free and clear of encumbrances and that the Defendants had the right to execute the lease agreement.

258.   The lease agreement was executed in Pennsylvania by the Defendants.

259.     Upon information and belief, the lease agreement was executed in California by

the Plaintiffs.

260.     Neither Plaintiffs nor Defendants were in the state of Florida when they executed

the lease agreement.

261.     No provision in the lease agreement was to take place or be fulfilled in Florida.

262.     Elizabeth Reilly and Plaintiffs were not in the state of Florida on April 8, 2019.

263.     According to the lease terms, the second installment payment was due "*regardless

of the Horse's condition of use.*"

264.     According to the lease terms, "Should the Horse be injured and deemed unusable

during the Lease Term, the Horse may be returned to the Lessor at the Lessee's

expense.  Prior to the return, *the lease balance must be paid regardless of the Horse's

condition of use.*"

265.     The lease balance of $50,000.00 was not paid by the Plaintiffs to the Defendants

on or before January 29, 2019 and has not been paid as of April 18, 2019.

266.     Plaintiffs breached the contract with Defendants in a number of ways including

but not limited to:

a.    Failing to pay the second lease installment of $50,000.00 on or before January 29,

2019.

b.    Failing to pay the second lease installment of $50,000.00 on or before April 8,

2019.

c.    Failing to notify Defendants immediately of the unsoundness of Rockette in

November and December 2018.

d. Failing to have their agents notify Defendants immediately of the unsoundness of Rockette in November and December 2018.

e. Failing to appropriately care for Rockette while she was in the Plaintiffs' care, custody and control to protect her from injury;

f. Fracturing the ankle of Rockette while she was in the Plaintiffs' care, custody and control;

g. Failing to ship Rockette as agreed to in the lease;

h. Failing to show Rockette as agreed to in the lease;

i. Pursuing causes of action against the Defendants based upon Florida law in violation of the lease agreement for Pennsylvania law to govern the lease agreement;

j. Fracturing Rockette's right front ankle.

267. As a result, Defendants have been harmed in a number of manners including but not limited to:

a. Economic loss resulting from their failure to pay the second installment;

b. Economic loss resulting from the breach of contract;

c. Economic loss resulting from the fractured ankle including medical bills and rehabilitation;

d. Diminution in value of Rockette.

## COUNTER-CLAIMS AGAINST THE PLAINTIFFS

## FOR A FIRST CAUSE OF ACTION – BREACH OF CONTRACT

268. Defendants incorporate by reference all previously stated paragraphs and reallege against the Plaintiffs all prior allegations as if more fully set forth herein.

269.    At the time of the contract between the Plaintiffs and the Defendants, at least one of the Plaintiffs was a licensed attorney in good standing with good knowledge of the law.

270.    At the time of the contract between the Plaintiffs and the Defendants, Defendants made certain agreements including but not limited to:

    a.    Agreeing to make two installment payments, totaling $150,000.00 for the lease of Rockette;

    b.    Agreeing to notify the Defendants of any lameness or health condition that developed with Rockette;

    c.    Agreeing to notify the Defendants of the whereabouts of Rockette;

    d.    Agreeing to ship Rockette across country by flight or by truck transportation in a box stall;

    e.    Agreeing not to show Rockette over more than eight (8) jumping courses in any one horse show;

    f.    Agreeing to make the second installment regardless of the condition of Rockette on or before April 8, 2019;

    g.    Agreeing to make the second installment on or before the return of Rockette, i.e. prior to January 29, 2019;

    h.    Agreeing to pay reasonable attorneys fees and costs related to Plaintiffs' default;

    i.    Agreeing to Pennsylvania Law as the choice of law to govern the lease agreement.

271.    Plaintiffs have breached the contract with the Defendants in one or more of the following manners:

a.   Failing to pay the second lease installment of $50,000.00 on or before January 29, 2019;

b.   Failing to pay the second lease installment of $50,000.00 on or before April 8, 2019.

c.   Failing to notify Defendants immediately of the unsoundness of Rockette in November and December 2018.

d.   Failing to have their agents notify Defendants immediately of the unsoundness of Rockette in November and December 2018.

e.   Failing to appropriately care for Rockette while she was in the Plaintiffs' care, custody and control to protect her from injury;

f.   Fracturing the ankle of Rockette while she was in the Plaintiffs' care, custody and control;

g.   Failing to ship Rockette as agreed to in the lease;

h.   Failing to show Rockette as agreed to in the lease;

i.   Pursuing causes of action against the Defendants based upon Florida law in violation of the lease agreement for Pennsylvania law to apply to the lease agreement;

j.   Fracturing Rockette's right front ankle.

272.   As a result of Plaintiffs' multiple breaches of contract, Defendants have sustained damages for which the Plaintiffs are liable including but not limited to the second $50,000.00 installment payment, economic loss associated with the rehabilitation of Rockette, economic loss associated with the costs of Plaintiffs' default; economic

losses related to the diminution in value of Rockette due to the injury suffered while in the care custody and control of the Plaintiffs.

WHEREFORE Defendants demand judgment against Plaintiffs, awarding Plaintiff damages as permissible by law, including but not limited to the second $50,000.00 installment, all other actual and consequential damages, diminution in value of Rockette, prejudgment interest and any other such relief as the Court finds just and proper.

### **FOR A SECOND CAUSE OF ACTION – NEGLIGENCE**

273.    Defendants incorporate by reference all previously stated paragraphs and reallege against the Plaintiffs all prior allegations as if more fully set forth herein.

274.    When Plaintiffs took possession of Rockette, they agreed to provide her with the appropriate care to ensure her safe keeping.

275.    Rockette suffered lameness and injury while in the care, custody and control of the Plaintiffs at some point after the November Las Vegas National Horse Show in 2018.

276.    Without determining the cause of the lameness, Plaintiffs blocked and injected Rockette's right front ankle in December 2018.

277.    Shortly after blocking and injecting Rockette's right front ankle in December 2018, Plaintiffs shipped Rockette across the country from California to Florida, without layover and without the box stall as agreed.

278.    Upon information and belief, Rockette was unsound when she arrived in Florida.

279.    Upon information and belief, Plaintiffs and or the agents of the Plaintiff continued to work Rockette in attempt to horse show her in Wellington during the first week of January.

280.    Upon information and belief, neither the Plaintiffs nor Reilly the agent trainer of the Plaintiffs noticed that Rockette was unsound on the day of show.

281.    Upon information and belief, another professional informed Plaintiffs and Reilly that Rockette was unsound.

282.    Upon information and belief, and without informing the Defendants, Plaintiffs had the unsoundness examined by veterinarians who recommended MRI of Rockette.

283.    MRI of Rockette revealed a fractured ankle.

284.    Rockette had never suffered lameness while in the possession of the Defendants.

285.    Rockette was never diagnosed with a fractured ankle while in the possession of the Defendants.

286.    Rockette required surgery as a result and suffers permanent injury to the right front ankle.

287.    Rockette's prognosis is optimistic.

288.    Ankle fractures like the one Rockette suffered are not commonly seen in show horses.

289.    Ankle fractures like the one Rockette suffered are more commonly seen in racehorses due to pounding.

290.    Plaintiffs did not use due care in their care and treatment of Rockette.

291.    Plaintiffs failure to render the proper care and treatment to Rockette was the proximate cause of her fractured ankle and lameness.

292.    Unfortunately, Defendants have come to know that several of Plaintiffs horses have broken as a result of poor care in the past few months.

293.    As a result, Defendants and Rockette are damaged.  Defendants have sustained

damages for which the Plaintiffs are liable including but not limited to the second

$50,000.00 installment payment, economic loss associated with the rehabilitation of

Rockette, economic loss associated with the costs of Plaintiffs' default; economic

losses related to the diminution in value of Rockette due to the injury suffered while

in the care custody and control of the Plaintiffs.

WHEREFORE Defendants demand judgment against Plaintiffs, awarding Plaintiff

damages as permissible by law, including but not limited to the second $50,000.00

installment, all other actual and consequential damages, diminution in the value of

Rockette, prejudgment interest and any other such relief as the Court finds just and

proper.

### FOR A THIRD CAUSE OF ACTION -- RECKLESSNESS

294.    Defendants incorporate by reference all previously stated paragraphs and reallege

against the Plaintiffs all prior allegations as if more fully set forth herein.

295.    When Plaintiffs took possession of Rockette, they agreed to provide her with the

appropriate care to ensure her safe keeping.

296.    Rockette suffered lameness and injury while in the care, custody and control of

the Plaintiffs at some point after the November Las Vegas National Horse Show in

2018.

297.    Without determining the cause of the lameness, Plaintiffs blocked and injected

Rockette's right front ankle in December 2018.

298.    Shortly after blocking and injecting Rockette's right front ankle in December

2018, Plaintiffs shipped Rockette across the country from California to Florida,

without layover and without the box stall as agreed.

299.    Upon information and belief, Rockette was unsound when she arrived in Florida.

300.    Upon information and belief, Plaintiffs and or the agents of the Plaintiff continued

to work Rockette in attempt to horse show her in Wellington during the first week of

January.

301.    Upon information and belief, neither the Plaintiffs nor Reilly the agent trainer of

the Plaintiffs noticed that Rockette was unsound on the day of show.

302.    Upon information and belief, another professional informed Plaintiffs and Reilly

that Rockette was unsound.

303.    Upon information and belief, and without informing the Defendants, Plaintiffs

had the unsoundness examined by veterinarians who recommended MRI of Rockette.

304.    MRI of Rockette revealed a fractured ankle.

305.    Rockette had never suffered lameness while in the possession of the Defendants.

306.    Rockette was never diagnosed with a fractured ankle while in the possession of

the Defendants.

307.    Rockette required surgery as a result and suffers permanent injury to the right

front ankle.

308.    Rockette's prognosis is optimistic.

309.    Ankle fractures like the one Rockette suffered are not commonly seen in show

horses.

310.   Ankle fractures like the one Rockette suffered are more commonly seen in racehorses due to pounding and the reckless conduct of the Plaintiffs as described above.

311.   Plaintiffs were reckless in their care and treatment of Rockette.

312.   Plaintiffs' reckless treatment of Rockette was the proximate cause of her fractured ankle and lameness.

313.   Unfortunately, Defendants have come to know that several of Plaintiffs horses have broken as a result of poor care in the past few months.

314.   As a result, Defendants and Rockette are damaged.  Defendants have sustained damages for which the Plaintiffs are liable including but not limited to the second $50,000.00 installment payment, economic loss associated with the rehabilitation of Rockette, economic loss associated with the costs of Plaintiffs' default; economic losses related to the diminution in value of Rockette due to the injury suffered while in the care custody and control of the Plaintiffs and punitive damages if the Court deems appropriate.

WHEREFORE Defendants demand judgment against Plaintiffs, awarding Plaintiff damages as permissible by law, including but not limited to the second $50,000.00 installment, all other actual and consequential damages, diminution in the value of Rockette, prejudgment interest and any other such relief as the Court finds just and proper.

## FOR A FOURTH CAUSE OF ACTION – UNJUST ENRICHMENT

315.   Defendants incorporate by reference all previously stated paragraphs and reallege against the Plaintiffs all prior allegations as if more fully set forth herein.

316.   Plaintiffs entered into a lease and agreed to pay Defendants in two installments.

42

317.    The second installment was due either upon the return of the horse or April 8, 2019, whichever came sooner.

318.    The second installment due under the contract was $50,000.00.

319.    The second installment was due regardless of the condition of the horse.

320.    Plaintiffs did not pay the second installment of $50,000.00 and are unjustly enriched by this amount.

321.    As a result, Defendants and Rockette are damaged.  Defendants have sustained damages for which the Plaintiffs are liable including but not limited to the second $50,000.00 installment payment, economic loss associated with the rehabilitation of Rockette, economic loss associated with the costs of Plaintiffs' default; economic losses related to the diminution in value of Rockette due to the injury suffered while in the care custody and control of the Plaintiffs.

WHEREFORE Defendants demand judgment against Plaintiffs, awarding Plaintiff damages as permissible by law, including but not limited to the second $50,000.00 installment, all other actual and consequential damages, diminution in the value of Rockette, prejudgment interest and any other such relief as the Court finds just and proper.

### Jury Demand

Defendants request trial by jury on all matters so triable as of right.

Respectfully Submitted,

Dated: April 18, 2019

/s/ Jason Richards
Jason Richards, FL Bar # 18207
Aylstock, Witkin, Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, Florida, 32502

850-202-1010
jrichards@awkolaw.com


Lynn Seithel *(pro hac vice pending)*
Seithel Law, LLC
Post Office Box 1929
John's Island, SC  29457
843-557-1699
lynn@seithellaw.com


**<u>CERTIFICATE OF SERVICE</u>**


I HEREBY CERTIFY that on April 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Copies of the foregoing will be served by electronic notification to the following listed below.


<u>/s/ R. Jason Richards</u>
R. Jason Richards, Esq.