UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 19-CV-80278-REINHART

BRETT SOKOLOW, et al.,

               Plaintiffs,

v.

DOMINIQUE DAMICO, et al.,

               Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 80) AND GRANTING PLAINTIFFS' MOTION TO STRIKE (DE 93)

On September 19, 2019, the parties consented to have the undersigned preside over the final disposition of this lawsuit. DE 65. Presently before the Court is Defendants' Motion for Summary Judgment (DE 80) and Statement of Undisputed Material Facts (SOF) (DE 79, 81, 86), Plaintiffs' opposition papers (DE 90) accompanied by their Responsive Statement of Material Facts (RSOF) (DE 89, 91), and Defendants' reply (DE 97). Also before the Court is Plaintiffs' Motion to Strike two affidavits of Rick Fleiderman submitted by Defendants in support of their Motion for Summary Judgment. DE 93. For the reasons explained below, Defendants' Motion for Summary Judgment (DE 80) is **GRANTED**. Plaintiffs' Motion to Strike the Affidavits of Rick Fleiderman (DE 93) is **GRANTED.**

## BACKGROUND

This case centers around a competitive show horse named Rockette. It is undisputed that in October 2018, the parties entered into a written Lease Agreement by which Defendants leased

Rockette to Plaintiffs for a period of 13 months for their daughter to use in show jumping competitions. Plaintiffs made a partial payment on the lease. In January 2019, Plaintiffs determined that Rockette was injured and could not be used for competitions. Plaintiffs then returned Rockette to Defendants and did not pay the balance owed on the lease.

## **SUMMARY JUDGMENT STANDARD**

The legal standard for summary judgment is well-settled:

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia,* depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.

. . .

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.

*Rubenstein v. Fla. Bar,* 72 F. Supp. 3d 1298, 1307–08 (S.D. Fla. 2014) (J. Bloom) (citations omitted).

<u>**UNDISPUTED FACTS**</u>

At all relevant times, Rockette was owned by Defendants. Defendant Damico owns Defendant Ramble on Farm (ROF), which is located in Pennsylvania. ¶¶ 2, 5.[1] Prior to Plaintiffs moving to California in June 2017, their minor daughter received equine training from Defendant Damico at ROF for several years. ¶ 5. When Plaintiffs moved to California, Plaintiffs' daughter began training with Elizabeth Reilly. ¶ 6.

In the summer of 2018, Plaintiffs arranged to lease Rockette from Defendants for a three-week period so their daughter could compete in horse shows. ¶¶ 9, 10. Plaintiffs sent Rockette to a veterinarian with their trainer Elizabeth Reilly in October 2018 to assess the horse's soundness and suitability. ¶ 10.[2] Thereafter, Plaintiffs and Defendants negotiated an extended lease for Plaintiffs' daughter to use Rockette through November 2, 2019. ¶¶ 11, 12. On October 8, 2018, the parties executed a Lease Agreement whereby Plaintiffs agreed to pay $100,000 at the time they executed the lease, and $50,000 on April 8, 2019. DE 41-1 (Lease Agreement). The Lease Agreement contained a choice-of-law provision that stated, "[t]he law of the State of Pennsylvania shall govern this Agreement." *Id.* ¶ 15.

Plaintiffs' daughter competed successfully with Rockette in several horse shows during the fall of 2018. ¶ 16. In November 2018, Plaintiffs shipped Rockette to Elizabeth Reilly's farm in California. ¶ 17. Plaintiffs' veterinarian, Dr. Baileys, examined Rockette on December 16, 2018

---

[1] Unless otherwise noted, paragraph citations ("¶") are to paragraphs in Defendants' SOF that are not directly controverted in RSOF.

[2] Plaintiffs dispute whether Ms. Reilly was present for the entire pre-lease veterinary examination. RSOF ¶ 10. This distinction is not material to the issues before the Court.

and found the horse to be sound. ¶ 18. Shortly thereafter, Rockette refused to jump and on December 20, 2018, Dr. Baileys examined Rockette again, this time for right front lameness. ¶ 19.[3] Plaintiffs did not notify any of the Defendants of Rockette's lameness in December. ¶ 21. Plaintiffs shipped Rockette from California to Wellington, Florida. ¶ 20. On January 3, 2019, while in Florida, Rockette had an MRI which revealed a fracture in the right front ankle and the horse underwent surgery that involved inserting a metal screw into Rockette's ankle. ¶ 22. On January 29, 2019, Plaintiffs returned Rockette to Defendants and did not pay the second lease installment of $50,000. ¶ 29.

## DISCUSSION

Defendants move for summary judgment on all ten causes of action alleged in the First Amended Complaint ("FAC"): Fraudulent Misrepresentation (Count One), Negligent Material Misrepresentation (Count Two), Unjust Enrichment and Disgorgement (Count Three), Strict Liability for Unfair and Deceptive Trade Practices (Count Four), Breach of Fiduciary Duties (Count Five), Breach of Contract (Count Six), Breach of Express Warranties (Count Seven), Breach of Implied Warranty of Fitness for Particular Purpose (Count Eight), Breach of Implied Warranty of Merchantability (Count Nine), and Rescission and Cancellation (Count Ten). DE 41. In essence, the FAC contends that Defendants procured the Lease Agreement by fraud because they "intentionally did not disclose" Rockette's pre-existing condition to "induce[ ] Plaintiffs to

---

[3] Although Plaintiffs dispute this fact in their RSOF, they do not provide a citation to any testimony or evidence that refutes Dr. Baileys' deposition testimony cited by Defendants. *See* Baileys Dep. Tr. 54:21-23; 56:20-57:2 (DE 79-6). Therefore, it is deemed incontrovertible. *See* Fed. R. Civ. P. 56(c)(1); S.D. Fla. Local Rule 56.1.

execute the Lease Agreement." FAC ¶¶ 62, 66. Plaintiffs claim to have rescinded the agreement by returning Rockette; they claim they are entitled to repayment of the lease fee. FAC ¶ 65.[4]

Defendants contend that they are entitled to summary judgment on all counts because (1) there was no fiduciary relationship between the parties at the time of the Lease Agreement, (2) Rockette was not injured prior to being in Plaintiffs' custody, (3) they had no duty to disclose any pre-existing conditions, (4) no material misrepresentations or omissions occurred, (5) Plaintiffs had a pre-purchase veterinary examination conducted on the horse and should have been aware of any alleged pre-existing conditions, and (6) based on a choice-of-law provision in the Lease Agreement, Pennsylvania substantive law governs disputes arising from the agreement, thereby negating Plaintiffs' claims based on the Florida Statutes. DE 80.

Plaintiffs counter that there are many disputed issues of fact as to the parties' relationship and Defendants' duties regarding disclosure of the horse's condition at the time the lease was executed. Plaintiffs also contend that because the Lease Agreement was procured by fraud, the agreement is void *ab initio*, the Pennsylvania choice-of-law provision is inapplicable, so Florida law applies to all claims in the FAC. DE 90; *see e.g., D & M Jupiter, Inc. v. Friedopfer*, 853 So.2d 485, 489 (Fla. 4th DCA 2003) ("where there is fraudulent inducement of a contract, the fraudulent misrepresentation vitiates every part of the contract.").

### *Fraudulent Misrepresentation and Negligent Misrepresentation (Counts One and Two)*

The sufficiency of Counts One and Two affects whether the choice-of-law provision in the Lease Agreement must be enforced, so the Court will address those Counts first. Plaintiffs contend

---

[4] Although Defendants filed counterclaims (DE 48, 57), no party moved for summary judgment on them. The Court will conduct a trial on those counterclaims.

that because disputed facts exist regarding the representations made about Rockette's condition, summary judgment is inappropriate on these Counts. *See* DE 90 at 2.

Counts One and Two allege that Defendants made both affirmative false statements and material omissions which fraudulently induced Plaintiffs to enter into the Lease Agreement. Specifically, the FAC alleges that "Defendants made statements to Plaintiffs and to Plaintiffs' veterinarian . . . that the Horse lacked any preexisting medical condition and was suitable for the intended purpose of the Plaintiffs." FAC at ¶¶ 70, 80. Plaintiffs also claim that Defendants "purposefully and willfully omitted . . . [material] information . . . about any preexisting medical conditions . . . with the intent to induce Plaintiffs to lease the Horse with an option to purchase, in order that Defendants receive compensation for that transaction." *Id.* at ¶¶ 71, 73, 74. Both Counts cite to a remedy provision of the Florida Uniform Commercial Code, Florida Statutes § 680.505(4), which states, "Rights and remedies for material misrepresentation or fraud include all rights and remedies available under this chapter for default." The Court therefore interprets Count One and Two to be asserting claims under Florida law.

"The elements of a claim for fraudulent inducement are: (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment." *Sena v. Pereira*, 179 So.3d 433, 435–36 (Fla. 4th DCA 2015) (quoting *Prieto v. Smook, Inc.*, 97 So.3d 916, 917 (Fla. 4th DCA 2012)). The elements of negligent misrepresentation are: "(1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation,

resulting in injury." *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So.3d 502, 505 (Fla. 1st DCA 2017); *accord Gongloff Contracting, L.L.C. v. L. Robert Kimball & Associates, Architects and Engineers, Inc.,* 119 A.3d 1070, 1076 (Pa. Super. 2015) (same elements under Pennsylvania law). "A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose. [S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *TransPetrol, Ltd. v.* Radulovic, 764 So.2d 878, 879-880 (Fla. 4th DCA 2000) (brackets in original) (citations omitted). [5]

Plaintiffs have not met their burden of showing the existence of a disputed material fact, or that they are otherwise entitled to judgment as a matter of law, on the theory of alleged

---

[5] The elements of fraudulent inducement under Pennsylvania law are materially the same as under Florida law:

> The elements of fraud in the inducement are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."

*Eigen v. Textron Lycoming Reciprocating Engine Div.,* 874 A.2d 1179, 1185 (Pa. Super. 2005) (citation omitted). With regard to fraud based on omissions, Pennsylvania law holds:

> that an omission is actionable as fraud only where there is an independent duty to disclose the omitted information; and that such an independent duty exists where the party who is alleged to be under an obligation to disclose stands in a fiduciary relationship to the party seeking disclosure; that in order to demonstrate the existence of a fiduciary relationship, the plaintiff must show a relationship involving trust and confidence; and that the proof must show the confidence reposed by one side and the domination and influence exercised by the other.

*In re Estate of Evasew,* 584 A.2d 910, 913 (Pa. 1990).

affirmative misrepresentations. Plaintiffs have not offered any *facts* that Defendants made affirmative misrepresentations about Rockette's condition. In their Answers to the unverified FAC, all Defendants denied that they told Plaintiffs and their veterinarian that Rockette lacked any pre-existing medical conditions. DE 48 ¶¶ 70, 80; DE 57 ¶¶ 70,80. They subsequently moved for summary judgment on Count One. In the RSOF, Plaintiffs did not offer any facts by affidavit, or cite to any portions of the record, that support the assertion that affirmative false representations were made. Because there is no evidence of an affirmative misrepresentation, Defendants are entitled to summary judgment on this theory of fraudulent inducement.

Plaintiffs' theory of fraudulent inducement based on alleged material omissions also lacks sufficient evidentiary support. Plaintiffs have not met their burden of showing there are disputed material facts whether a fiduciary, confidential, or trust relationship existed at the time of the Lease Agreement or, alternatively, that the undisputed facts demonstrate such a relationship. Although Defendant Damico had provided services to Plaintiffs' daughter in the past, it is undisputed that Defendant Damico had ceased any professional relationship with Plaintiffs in 2017. The evidence is silent on whether Defendants Williams or ROF ever had a fiduciary, confidential, or trust relationship with Plaintiffs. For purposes of the lease transaction, it is undisputed that Plaintiffs had their own trainer and veterinarian to assess Rockette. Even in the light most favorable to Plaintiffs, these undisputed facts evince an arms-length transaction between equals, not a relationship of trust and confidence. Therefore, the alleged material omissions cannot support a fraudulent inducement claim.

In any event, Counts One and Two fail as a matter of law because the subject of Defendants' alleged affirmative misrepresentations was "adequately covered or expressly contradicted" in the Lease Agreement. *B & G Aventura, LLC v. G-Site Ltd. Partnership*, 97 So.3d

308, 309–10 (Fla. 3d DCA 2012) (affirming summary judgment in defendant's favor on plaintiff's fraudulent inducement claim because the parties' written contract included specific provisions disclaiming oral representations and confining the agreements and obligations of the parties to those set forth in the contract) (quoting *Hillcrest Pac. Corp. v. Yamamura*, 727 So.2d 1053, 1056 (Fla. 4th DCA 1999)).  According to the Lease Agreement, Plaintiffs "acknowledge[d] that [Defendants] ha[ve] made the Horse available and [Plaintiffs] ha[ve] conducted all such investigation of the Horse that it deems necessary or appropriate so as to be satisfied with the Horse's health, its condition and suitability for its intended use."  Lease Agreement ¶ 9.  The contract also states that "[t]his Agreement represents the entire Agreement between the parties and may not be amended except in writing."  Lease Agreement ¶ 16.  Therefore, Plaintiffs' claim that they were induced to enter into the contract by Defendants' affirmative misrepresentations about Rockette's physical condition is conclusively belied by the express terms of the Lease Agreement and the undisputed facts.  *See Hillcrest Pac. Corp.*, 727 So.2d at 1056 (fraudulent inducement claim was properly dismissed where complaint's allegation that defendant misrepresented the price was "fatally inconsistent" with the agreement which clearly stated the price)).

Summary judgment will be entered on Counts One and Two. [6]

*Rescission and Cancellation – Count Ten*

Count Ten alleges that the Lease Agreement "was procured by Defendants through fraudulent misrepresentations and omissions."  FAC ¶ 129.  It further asserts, "Plaintiffs have notified Defendants prior to this lawsuit that Plaintiffs are rescinding and cancelling the Lease Agreement because of the aforesaid fraud and deception by Defendants."  *Id.* ¶ 130.  To state a

---

[6] The result would be the same even if the Court analyzed Counts One and Two under Pennsylvania law.

cause of action under Florida law for rescission or cancellation of a contract, a party must allege: (1) the character or relationship of the parties; (2) the making of the contract; (3) *the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation*; (4) that the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) if the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) that the moving party has no adequate remedy at law. *Lustig*, 2010 WL 11519401, at *3 (citing *Billian v. Mobil Corp.*, 710 So.2d 984, 991 (Fla. 4th DCA 1998) (emphasis added)); *accord Umbelina v. Adams*, 34 A.3d 151, 158 (Pa. Super. 2011) ("Our [Pennsylvania] courts have established that the 'only grounds upon which equity will permit rescission of an executed contract are fraud, mistake, failure of consideration, and quia timet.'") (citations omitted). The absence of a valid claim for fraud or misrepresentation negates Plaintiff's claim for rescission and cancellation. *See Lustig*, 2010 WL 11519401, at *3 (because plaintiff failed to demonstrate the existence of fraud or false representation, the court found no genuine issue of material fact and granted defendant's motion for summary judgment on plaintiff's rescission count); *Umbelina*, 34 A.3d at 160 ("As the trial court rejected the Umbelinas' fraud claim, the Umbelinas have not proven they are entitled to rescission."). Here, Plaintiffs' claims for fraudulent misrepresentation and negligent misrepresentation fail as a matter of law, so summary judgment is warranted on their rescission claim, too.

Alternatively, Defendants argue that they are entitled to summary judgment on Count Ten because Plaintiffs have an adequate remedy at law and because Rockette was not returned in the same condition that predated the Lease Agreement. DE 80 at 17. Rescission can occur only when the parties are restored to the *status quo ante* that existed before the agreement. *Mulle v. Scheiler*,

484 So.2d 47 (Fla. 5th DCA 1986) ("the equitable remedy of rescission is generally not available unless the condition of the parties as it existed prior to the execution of the contract can be restored"); *accord Sullivan v. Allegheny Ford Truck Sales, Inc.,* 423 A.2d 1292, 1295 (Pa. Super. 1980) ("Rescission is to be granted only where the parties to the contract can be placed in their former positions with regard to the subject matter of the contract."). The undisputed material facts, even when viewed in the light most favorable to Plaintiffs, show that the *status quo ante* was not restored. When Rockette was transferred to Plaintiffs, she was a capable show jumping horse. ¶ 16. When she was returned to Defendants, she had been subjected to surgery and now had a foreign object (a screw) in her right front ankle. ¶¶ 22, 29.[7]

Plaintiffs argue that any failure to return Rockette in the pre-lease condition was the result of Defendants' failure to disclose the pre-existing condition. DE 90 at 27-28. They cite to an exception to the general rule. That exception allows rescission "where the inability of the buyer to restore is caused by the very fraud perpetrated by the sellers." *See Mulle*, 484 So.2d at 48. Here, the Court has rejected Plaintiffs' fraud claim, so the exception is inapplicable. Because Rockette was not returned in the same condition as before the Lease Agreement, rescission cannot occur.

Finally, Plaintiffs argue that they lack an adequate remedy at law because the Lease Agreement was void *ab initio* because it was procured by fraud. FAC ¶ 131. Based on the Court's finding that no fraud occurred, this argument is rejected. Moreover, Plaintiffs have asserted

---

[7] Plaintiffs' RSOF disputes whether Rockette underwent surgery and a screw was implanted in her right front ankle. DE 89 at 14. The SOF cites the deposition testimony of Dr. Kimberly Bordeleau as factual support for this assertion. DE 79 ¶ 22. Plaintiffs argue, "The citations provided [in the SOF] make no reference to the facts of the statement given therefore mischaracterizes the testimony." DE 89 at 14. Plaintiffs are correct that the cited portions of Dr. Bordeleau's deposition do not support this fact. Nevertheless, other portions of her deposition (which was filed in the record in support of the Motion for Summary Judgment) support it, *see* DE 79-7 at 53-55, so the Court will consider it. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited material, but it may consider other materials in the record.").

multiple claims for damages, including a breach of contract claim. They have an adequate remedy at law, which independently precludes rescission.

*The Lease Agreement's Choice-of-Law Provision*

Once the claims for fraud and rescission fail as a matter of law, Plaintiffs are left with (1) a breach of contract claim for damages (Count Six), (2) common-law claims for unjust enrichment and breach of fiduciary duties (Counts Three and Five), and (3) Florida statutory claims for unfair and deceptive trade practices (Count Four), breach of express warranties (Count Seven), breach of implied warranty of fitness for a particular purpose (Count Eight), and breach of implied warranty of merchantability (Count Nine). By alleging a claim for breach of contract and seeking monetary damages, Plaintiffs have ratified the Lease Agreement and reaffirmed its terms, including the Pennsylvania choice of law provision. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.,* 761 So.2d 306, 313 (Fla. 2000) (claim for damages affirms contract and thus ratifies its provisions); *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So.2d 630, 634 (Fla. 4th DCA 2005) (court rejected plaintiffs' argument that because the contract was purportedly entered into through fraudulent inducement, the entire contract is unenforceable; court noted that plaintiffs did not disaffirm contract by suing for rescission; instead they sued for damages, "which affirms the contract and its terms").

Choice-of-law provisions like the one at issue here are "presumptively valid" and it is Plaintiffs' burden to demonstrate why the Lease Agreement's choice of Pennsylvania law should not be enforced. *See Mazzoni Farms, Inc.*, 761 So.2d at 311. When parties agree to be bound by the substantive laws of another jurisdiction Florida courts will enforce a choice-of-law provision "unless applying the chosen forum's law would contravene a strong public policy of this State." *Southeast Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So.3d 73, 80 (Fla. 2012). "The

countervailing public policy must be of sufficient importance and rise above the level of routine policy considerations to warrant invalidation of a party's choice to be bound by the substantive law of another state." *Id.*

Here, Plaintiffs have not established that reliance on Pennsylvania law will contravene any strong public policy in Florida. Simply put, when an unambiguous, valid choice-of-law provision exists, as it does here, there is no need for the court to engage in a further conflict of laws analysis. *See Wilmington Tr., N.A. v. Lincoln Benefit Life Co.*, No. 17-23669-CIV, 2018 WL 6308687, at *3 (S.D. Fla. Sept. 20, 2018) (J. Cooke). *Cf. Brown Jordan Int'l Inc. v. Carmicle*, No. 14-60629-CIV, 2015 WL 6123520, at *2 (S.D. Fla. Oct. 19, 2015) (J. Rosenberg) (where employment agreement's choice-of-law provision was narrow and did not encompass the wrongful termination claim, court was compelled to engage in a conflict of laws analysis), *aff'd*, 846 F.3d 1167 (11th Cir. 2017). This Court will apply Pennsylvania law.

### *Florida Statutory Claims (Counts Four, Seven, Eight, Nine)*

Having concluded that Pennsylvania law provides the rule of decision, the Court must grant Defendants' motion for summary judgment as to the Florida statutory claims. *Southeast Floating Docks, Inc.,* 82 So.2d at 82 ("when parties have agreed to be bound by the substantive law of another jurisdiction, [a substantive Florida statute] simply does not apply."). *See also Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 211 (3d Cir. 2013) (affirming summary judgment dismissal of New Jersey fraud claim where South Carolina law governed the case); *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 382 (D.N.J. 2014) (dismissing New Jersey fraud claim where California law applied); *Szczubelek v. Cendant Mortg. Corp.,* 2001 WL 34875217, at *3 (D.N.J. June 15, 2001) (court dismissed claims relying on other states' laws where plaintiff and the relevant transaction "appear to have no connection to states other than New Jersey, and, as such, the

application of other states' laws to her claims appears arbitrary and illogical at best."). Accordingly, summary judgment will be entered in favor of Defendants on Counts Four, Seven, Eight, and Nine

### Unjust Enrichment and Disgorgement (Count Three)

Count Three alleges that it would be inequitable to allow Defendants to retain the lease payment given that they delivered a non-conforming horse. FAC ¶¶ 89, 93, 94. Plaintiffs seek the return of the lease fee, plus other actual damages. *Id.* ¶ 93. Defendants move for summary judgment because unjust enrichment is a cause of action that cannot be sustained where there is an express contract. DE 80 at 7-9. Plaintiffs respond that the Federal Rules of Civil Procedure allow them to plead in the alternative. DE 90 at 14-15.

Here, the undisputed existence of the Lease Agreement precludes Plaintiffs' claim for unjust enrichment under Pennsylvania law. By its nature, the doctrine of quasi-contract, or unjust enrichment, is inapplicable where a written or express contract exists. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).

> A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred. In other words, the defendant makes restitution to the plaintiff in *quantum meruit*.

*AmeriPro Search, Inc. v. Fleming Steel Company*, 787 A.2d 988, 991 (Pa. Super. 2001) (citations omitted). According to the Supreme Court of Pennsylvania, "it has long been held in this

Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (quoting *Third National & Trust Company of Scranton v. Lehigh Valley Coal Company*, 44 A.2d 571, 574 (Pa. 1945)). *See also Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006) (quasi-contract claim was properly dismissed on summary judgment because the record contained fully-executed written agreements that were supported by consideration).

The Court rejects Plaintiffs' argument that they should be permitted to proceed to trial on both the unjust enrichment and breach of an express contract claims in the alternative. Although courts routinely permit plaintiffs to *plead* these claims in the alternative at the beginning of a lawsuit, at the summary judgment phase, if the undisputed facts establish that an express contract exists, the unjust enrichment claim fails as a matter of law.

Judgment will be entered for Defendants on Count Three.

*Breach of Fiduciary Duties (Count Five)*

The FAC pleads that Defendants owed Plaintiffs a fiduciary duty when they negotiated the Lease Agreement because Plaintiffs had relied on Defendants' special knowledge and expertise for many years and trusted that Defendants would put Plaintiffs' interests before their own. *See* FAC ¶¶ 103, 104. Defendants assert that the undisputed facts establish that no fiduciary relationship existed when the Lease Agreement was negotiated. DE 80 at 10-11.

Under Pennsylvania law, when alleging that a fiduciary duty has been breached, the plaintiff must first establish the existence of a fiduciary relationship. A fiduciary duty is the "highest duty implied by law" and "requires a party to act with the utmost good faith in furthering

and advancing the other person's interests, including a duty to disclose all relevant information." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819-20 (Pa. 2017) (citations omitted). "This highest duty will be imposed only where the attendant conditions make it certain that a fiduciary relationship exists." *Id.* at 820 (citation omitted). Fiduciary duties do not arise "merely because one party relies on and pays for the specialized skill of the other party." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 23 (Pa. Super. 2002). "[T]he critical question is whether the relationship goes *beyond* mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on one side or 'weakness, dependence, or trust, justifiably reposed' on the other side," which results in the effective ceding of control over decision-making." *Id.* at 23 (emphasis in original) (holding that although an advertising company was a "trusted advisor" to a software developer, no fiduciary relationship existed between the parties) (citing *Basile v. H & R Block*, 777 A.2d 95, 101 (Pa. Super. 2001)). "A fiduciary duty may arise in the context of consumer transactions only if one party *cedes decision-making control to the other party." Yenchi*, 161 A.3d at 823 (emphasis in original).

Here, there is no evidence to support the conclusion that Plaintiffs ceded their decision-making control regarding leasing Rockette to Defendants. On the contrary, there is undisputed evidence that Plaintiffs had their own trainer, Elizabeth Reilly, and their own veterinarian examine Rockette. Moreover, even assuming a sufficient "special relationship" existed between the parties when Plaintiffs lived in Pennsylvania and their daughter trained with Defendant Damico, that relationship was no longer present when Defendants recommended that Plaintiffs lease Rockette. Indeed, over one year had passed since Plaintiffs' daughter had trained with Defendants. Because the undisputed facts show that no fiduciary relationship existed at the relevant time, judgment will be entered in favor of Defendants on Count Five.

_Breach of Contract (Count Six)_

Count Six of the FAC alleges that Defendants had an affirmative duty under the Lease Agreement to disclose all defects, and that Defendants breached the Lease Agreement by failing "to provide Plaintiff with a Horse that was free from undisclosed defects." FAC ¶ 100; _see id._ ¶ 102 ("Defendants failed to perform Defendants' requisite act under the contract by failing to deliver a Horse that was free from undisclosed defect of the Preexisting Condition at the time of delivery."). To maintain a cause of action for breach of contract under Pennsylvania law, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. _Gorski v. Smith_, 812 A.2d 683, 692 (Pa. Super. Ct. 2002). For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain. _Peck v. Delaware County Board of Prison Inspectors_, 814 A.2d 185, 191 (Pa. 2002). Under the Pennsylvania Uniform Commercial Code, "Except for a finance lease, if the lessor at the time the lease contract is made has reason to know of any particular purpose for which the goods are required and that the lessee is relying on the lessor's skill or judgment to select or furnish suitable goods, there is in the lease contract an implied warranty that the goods will be fit for that purpose." 13 Pa.C.S.A. § 2A213 (2019). This implied warranty can be excluded "by expressions such as 'as is', 'with all faults' or by other language which in common understanding calls the lessee's attention to the exclusion of warranties and makes plain that there is no implied warranty, if in writing and conspicuous." 13 Pa.C.S.A. § 2A214(c)(1) (2019). Alternatively, "[i]f the lessee before entering into the lease contract has examined the goods or the sample or model as fully as desired or has refused to examine the goods, there is no implied warranty with regard to defects

that an examination ought in the circumstances to have revealed." 13 Pa.C.S.A. § 2A316(c)(2) (2019).

Plaintiffs have not cited to an express provision of the Lease Agreement that creates a duty to disclose Rockette's pre-existing medical condition.[8] Instead, Plaintiffs point to parol evidence of statements that Defendants made in an insurance application and to allegedly inconsistent statements about whether Defendants disclosed Rockette's condition to Plaintiffs. DE 90 at 20-23. Neither establishes a disputed material fact showing Defendants had a contractual duty to disclose.

Defendants argue that the Lease Agreement did not require them to provide a horse free from undisclosed defects. DE 80 at 13. They argue that the Lease Agreement only required them to make Rockette available to Plaintiffs for a pre-lease inspection, which occurred. It is undisputed that the Lease Agreement lacks a specific promise to disclose any defects. It is also undisputed that the Lease Agreement required full payment "regardless of the Horse's condition of use." Lease Agreement ¶¶ 3, 5. It is also undisputed that Plaintiffs acknowledged they "had conducted all such investigation of the Horse that [they] deem[ed] necessary or appropriate so as to be satisfied with the Horse's health, its condition and suitability for its intended use." *Id.* ¶ 9. Taken together, these undisputed facts establish that Plaintiffs were taking custody of Rockette "as is", with a right of inspection. That is, if Plaintiffs took custody of Rockette after having the

---

[8] It is not clear whether Plaintiffs also assert that Defendants breached an implied warranty of suitability under Pennsylvania law. They seem to argue that Defendants warranted that Rockette was suitable for "pleasure riding and for showing in the 3'3" – 3'6" hunter divisions." *See* Lease Agreement ¶ 7. To the extent they make this argument, it fails. First, even in the light most favorable to Plaintiffs, the undisputed facts show that they were not relying on Defendants' skill or judgment in this transaction. Rather, it was an arms-length transaction where Plaintiffs employed their own trainer and veterinarian to evaluate Rockette. Additionally, it is undisputed that Plaintiffs had the opportunity to fully inspect Rockette.

opportunity to inspect him, they assumed the risk of any pre-existing injury or defect. In sum, the Lease Agreement did not require Defendants to provide a horse free from undisclosed defects. Therefore, it is immaterial whether Defendants knew of a pre-existing condition or that there may be conflicting evidence about whether Defendants actually disclosed a pre-existing condition to Plaintiffs.

Plaintiffs cannot rely on alleged representations (or non-disclosures) about Rockette's condition that are not contained in the Lease Agreement. The Lease Agreement contains an integration clause, which states, "This Agreement represents the entire Agreement between the parties and may not be amended except in writing." Lease Agreement ¶ 16. "Where the parties to an agreement adopt a writing as the final and complete expression of their agreement, alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically covered by the written contract are merged in or superseded by that contract." *Blumenstock v. Gibson,* 811 A.2d 1029, 1035 (Pa. Super. 2002). As discussed above, the Lease Agreement specifically allocates the risk of loss to Plaintiffs, subject to a right of inspection. *See* Lease Agreement ¶ 9 (titled "Risk of Loss and Insurance"). Therefore, the Court may not consider parol evidence on this issue.

In sum, the Lease Agreement did not require Defendants to provide a defect-free horse. Plaintiffs have not shown a breach of the Lease Agreement. There are no disputed issues of fact that are material to this determination. Summary judgment will be entered for Defendants on Count Six.

### *Plaintiffs' Motion to Strike the Affidavits of Rick Fleiderman (DE 93)*

On November 4, 2019, Defendants filed an unexecuted copy of an affidavit of Rick Fleiderman as an exhibit to their SOF. DE 79-1. The document asserted that Mr. Fleiderman had

been a professional horse trainer in California for over 20 years and that he worked with Rockette, Elizabeth Reilly, and the Plaintiffs in 2018 and through April 2019. *Id.* ¶¶ 1, 2, 4, 24. It alleged that the riding surfaces at Reilly's California farm where Rockette was shipped in November 2018 was "overly hard and cement-like" (¶ 7), and that by mid-December the horse became unwilling to jump. *Id.* ¶¶ 9,12. It also made the vague assertion that "we knew Rockette had an [osseous cyst defect ("OCD")] in the right hind ankle." *Id.* ¶ 10. It did not identify who constituted "we" and did not assert that Plaintiffs were aware of Rockette's OCD when they entered into the Lease Agreement.

Then on November 13, 2019, two days before Plaintiffs' response to the summary judgment motion was due, Defendants filed an executed affidavit by Mr. Fleiderman (DE 86-1), but this version was distinctly different from the first unexecuted version. Certain portions of the first affidavit were omitted from the second and new language was added.

The Court finds that neither affidavit is properly before it and therefore they must be stricken. As an initial matter, it appears that the first affidavit was never signed by Mr. Fleiderman, much less sworn to, and thus the Court cannot consider it. *See McCaskill v. Ray*, 279 Fed. Appx. 913, 915 (11th Cir. 2008) (relying on Fed. R. Civ. P. 56(e) in holding that "[u]nsworn statements . . . should not be consider[ed] in determining the propriety of summary judgment") (citation omitted); *Sanchez v. McCray*, No. 05-22171-CIV, 2007 WL 9734463, at *1 (S.D. Fla. Sept. 11, 2007) (J. White) (an unsworn affidavit is "not competent" to raise an issue of fact on summary judgment); *Smith v. Bi/Lo Holdings LLC/Winn-Dixie Stores, Inc.*, 2017 WL 11456616, at *2 (N.D. Fla. Jan. 24, 2017) (court disregarded unexecuted affidavit).

As for the second affidavit, Defendants have not established good cause for the untimely filing and it would be unduly prejudicial to have expected Plaintiffs to respond to the significantly

revised affidavit on such short notice. *Cf. Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993) (district court properly considered affidavit which was filed five days late, because it was merely an executed version of the earlier affidavit and so defendant was on notice of the contents). In any event, the Court finds that neither affidavit is relevant to the instant motion for summary judgment and would not change the outcome were the Court to consider them because they contain vague and conclusory assertions without any foundation and the affidavits primarily serve to support Defendants' affirmative defenses and counterclaims, neither of which are at issue with this motion.

## CONCLUSION

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Defendants have met their burden on all counts. Therefore, Defendants' Motion for Summary Judgment (DE 80) is **GRANTED.** Judgment will be entered in favor of Defendants on Counts One through Ten.

Plaintiffs' motion to strike the Fleiderman affidavits (DE 93) is **GRANTED.**

**DONE AND ORDERED** in Chambers this 26th day of December, 2019, at West Palm Beach in the Southern District of Florida.

_____

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE